The last case this afternoon is ILMO Products v. Department of Revenue for the Department of Revenue's Timothy McPike. It's the felon for the affidavit, Mr. Keaton. Mr. McPike, you may proceed, sir. May it please the court, counsel. Counsel. ILMO is not entitled to summary judgment on either of the two issues at issue here. Therefore, we ask this court to reverse its decision. On the first issue, regarding the HAZMAT fees and whether they're taxable, ILMO is not entitled to summary judgment because a question of fact exists whether those HAZMAT fees recoup regulatory costs on regulations that relate to the taxable gas sales or to the non-taxable cylinder rentals. In regard to ILMO's purchase of cryogenic systems, the second question at issue here, and whether those are taxable for use tax, the facts show that those systems are primarily taxable storage equipment and not primarily tax-exempt manufacturing. I'd like to address the cryogenic systems first. Section 3-5.18 of the Use Tax Act exempts equipment, machinery that is used primarily for manufacturing. And I want to emphasize the word primarily. Section 3-50 of the Act defines manufacturing as the production of articles of tangible personal property that changes existing material into material with a different form. Now clearly with the cryogenic systems that comprise a storage tank and a vaporizer, clearly the storage tank does not change anything to a different form. So that is clearly not manufacturing equipment. A question, there's a closer question with the vaporizer, which does in fact change liquidified gas into gaseous gas. But for reasons I will explain, when you consider the overall process from initial manufacturing to the end user, this Court should hold that that is not primarily manufacturing equipment, but is primarily part of the storage equipment. Now Section 130.330-D4 of the Department's regulations provide that machinery used for storage or transport prior or after completion of the production cycle, which is the manufacturing cycle, is not tax-exempt. So clearly the storage portion of the cryogenic system is that, strictly storage. And under two cases that we've cited in our brief at page 19, the liquid air case and the air coat case, those cases dealt with cryogenic systems and they specifically referred to the storage units as, in fact they referred to cryogenic systems generally as storage units, but they mentioned that you need a vaporizer to vaporize it back into gaseous gas. So there can be really no question of law as to the storage units, storage tanks of the cryogenic systems are storage, they are taxable, or they are not tax-exempt. What about the Zenith case, counsel? I'm sorry, which case? The Zenith case. That case, which was the plastic trays, that stands for one proposition that we think this Court should hold in our favor, which is that the Court look at the entire manufacturing process. And that was a manufacturing process that took place at two different locations, so in that sense it doesn't apply here. But the trays were simply used to ship the ray tubes, correct? That's correct, and the Court held because they served a protective function, and because it was an integrated manufacturing process, that even though they were used for transportation, when you looked at the overall manufacturing process, they were necessary to the manufacturing process to protect parts in transit from one part of the manufacturing process to the other part of the manufacturing process. That is not the same situation we have here. And the reason we don't have that situation here is because under the Keystone case, which we cited in our briefing page 18, that case dealt with whether there was going to be tax applied on a system that extracted gaseous oxygen and nitrogen from the air. That case held that the extraction from the air constituted creating tangible personal property that was taxable. In other words, that under Section 3-50 of the Use Tax Act constituted the manufacturing of gaseous gas. So we know that the actual initial manufacturing, we say the manufacturing of gaseous gas, occurs when you extract it from the air. Now, the production cycle at that point is essentially completed for gaseous gas. And as these facts show, all of the end users in this case, Ilmo itself, which sold gaseous gas to people, and Ilmo's lessees of the cryogenic systems, which used gaseous gas in their manufacturing process, they could have purchased their gaseous gas directly from the manufacturer as one of the parties in Keystone did. They could have purchased it directly from the party that extracts it from the ambient air, puts it into a tank in gaseous form, and they could have bought it. There's absolutely no functional need for a cryogenic system to manufacture gaseous gas. And that's why we say when this court should look, as it did in the Zenith case, and as it did in the other cases that we cite and distinguish regarding the cement trucks, if you look at the entire process from the initial extraction from the air to the end user, it's clear that the cryogenic system, including the vaporizer, has one primary and the only economic and functional purpose for using that system, is for economics, for bulk storage and bulk purchase and storage of gas in liquefied form, which is much more compressed. It's essentially, as you use on your computer, to compress data. So while we concede, or we don't concede, we recognize that the vaporizer does change the form. When you look at its actual function in the overall process, it is primarily a storage system. And the purpose of that storage system, functionally and economically, is for economical transportation and storage and purchase. I think liquefied gas is cheaper. I can't actually say that. I take that back. I'm not sure the record supports the economics of volume of gas versus volume of liquefied gas. But certainly for transportation and storage, it is economically and functionally easier to use liquefied gas. So that's our basic argument on why, when you, clearly the tanks, we think, no question, storage, taxable. And the vaporizers, when you look at the cryogenic system as a whole, the primary function is for economic bulk storage and bulk transportation. In regard to the hazmat feeds, they are not entitled to summary judgment there because the stipulation wasn't sufficient. The stipulation, which is in our appendix, page 11, paragraph 5, says, with the rental of high-pressure gas cylinders, ILMO includes a separately stated hazmat feed related to ILMO's compliance with unspecified hazardous materials laws and regulations. Now, the question about whether the fee that they charge to recoup those regulatory costs is taxable does not depend on what transaction they tap the fee onto. Whether it's taxable depends on what underlying regulatory costs they are recouping. There's nothing in the record to tell the court which costs, which regulations they are recouping. Therefore, there's a question of fact. The Bell Ford case is this case, this court's case, which said that when you're recouping a regulatory cost in a fee, there it was the fee that the auto dealer charges to prepare the title. Whether that fee is taxable depends on what the underlying regulation relates to. If the underlying regulation relates to a taxable transaction, the fee is taxable. If the underlying regulation relates to a non-taxable transaction, the fee is not taxable. Here, we specified, we stipulated, as to ILMO's sale of gas, which is a taxable transaction, that those HAZMAT fees were taxable because we specified in the stipulation that those underlying regulations related to the sale of gas. But in the sale, in the leasing of the tanks, and the leasing is not a taxable transaction, the stipulation didn't specify what the underlying regulations were. Therefore, question of fact, they're not entitled to summary judgment. What was the intent of that stipulation? The intent of the stipulation? Wasn't it to remove all these kinds of factual issues? They didn't do it, though. They failed to remove the factual issue. I think the ILMO stated in their brief, which is not evidence, that it related to those things, but there's nothing in the record. Okay. Thank you, counsel. Thank you. Mr. Caton. Please report, Mike. Counsel. Prior to going into the argument itself, I wanted to point out one error in the appendix to our brief. In appendix pages A1 and A2, they're slightly different than the spreadsheets that were in the record itself, pages 135 and 136. And the intent was to provide the court with nice, crisp color copies as opposed to the black and white copies that were in the record. But when we pulled up the color copies, we copied the wrong one. So you have the correct numbers in the record, but you have nice color copy, which has some incorrect numbers in the appendix. As Mr. McPike said, there are two aspects to this case. One is related to the attempt to claim that ILMO is required to pay sales tax on the HAZMAT fees that it collects in regard to the rental of its high-pressure gas cylinders, and the other aspect being the claim that ILMO should have paid use tax on the approximately $1.4 million worth of Unlike Mr. McPike, I'm going to take him in the other order. I think that in terms of the sales tax issue and the HAZMAT fees, everybody agrees as to a number of things. One is that ILMO has a number of different aspects to its business, one of which is manufacture and sale of medical industrial specialty gases, which is, of course, tangible personal property, which is subject to the sales tax, and on which they add a HAZMAT fee related to those kinds of transactions, and on which they collect sales tax and remit it to the State of Illinois. The other aspect, or one of the other portions of their business, is the rental of high-pressure gas cylinders to its customers. And those rentals of the cylinders are not sales of tangible personal property. In fact, it's stipulated that they are not sales of tangible personal property. Therefore, they are not subject to the sales tax. And in a very straightforward manner, there is no tax that is due on that particular transaction, and ILMO adds as a separate item on this non-sale transaction a HAZMAT fee. It does not collect sales tax on that HAZMAT fee that it collects from its customers. It's clear that the transactions that involve these gas cylinders are wholly related to ILMO customers' possession of the gas customers. In fact, we call it cylinder days in the stipulation to try to provide some form of measure or description of what the basis for the charge is. And the ILMO customer pays that cylinder day per diem charge, regardless of whether there's any gas in the tank, without regard to who fills the tank. The cylinder is there, and as long as the cylinder is in someone's possession, there is a $0.24, $0.28 per diem charge that ILMO charges that customer for having that cylinder in their possession. There's nothing about that rental of the gas cylinder that inseparably links that rental and the HAZMAT fee that ILMO charges with regard to that cylinder rental to the sale of gas. Mr. McPike, in his brief, cited to the AERCO case, and in that particular case, it was not really about the rental fees. It was about whether or not there were separately stated costs to reimburse AERCO for expenses that were necessary to sell the gas. And the appellate court found that there was no such inseparable link. The Velde case, which Mr. McPike alluded to and which he cited in his brief, dealt with whether it was correct to collect sales tax on licensing and title fees that an automobile dealership was charging for those services. And the court found that there was an inseparable link because the state statute said to the automobile dealers, you must do these steps as part of the sale transaction. And so, in effect, there was no car driven off the lot until the licensing and the titling was done. And therefore, it made perfect sense that those charges that were inseparable from the purchase of the vehicle would be subject to the sales tax. That's not what we've got here. We've got a fee that is purely and simply a part of a rental of a gas cylinder for which the Department of Revenue agrees that the transaction is not subject to the sales tax, yet it tries to cast the HAZMAT fee, which is charged as part of that rental transaction, as being some kind of charge on a non-existent sale of gas. As I indicated in the brief, that particular charge could take the form of some kind of delivery charge. It could take the form of some kind of cylinder rehabilitation fee, a graffiti removal fee, a cylinder regulatory compliance fee. No matter what you call it, it is unrelated to any sale of gas and that would be inseparably linked to that particular rental of the cylinders. And so the trial court correctly found that there was no genuine issue as to any material fact and correctly ordered that the Department of Revenue refund the $28,216 that had been paid under protest as both the sales tax, the penalties, and the interest by ILMO. The second part of the case, as I indicated, involves the $1.4 million worth of cryogenic system components that were purchased by ILMO. They were purchased from vendors outside the state of Illinois. There was no use tax paid on them by ILMO. And as Mr. McPike indicates, there are basically two arguments that the state is making as to why this should be taxed. The first argument seems to be that while those cryogenic systems don't manufacture, in other words, extract the oxygen, the nitrogen, the carbon dioxide, whatever gases are in the atmosphere, they don't physically extract those gases as part of the manufacturing process of that gas. The other argument, as he pointed out, is that these are things that are nothing more than storage. And I would argue to the court that both of those arguments miss the mark. We agree that the cryogenic systems do not serve the purpose of extracting gas from the atmosphere. But that has absolutely no relevance as to whether they constitute manufacturing and assembly machinery and equipment, which is exempt from the use tax. The exemption for the manufacturing machinery and equipment, as indicated, is found in Section 3-5, Paragraph 18 of the use tax. And it exempts manufacturing and assembling machinery and equipment used primarily in the process of manufacturing or assembling tangible personal property for wholesale or retail lease or sale. And then the Act goes on to help explain what the manufacturing process means in Section 3-50. And it explains that the manufacturing process means production of an article of tangible personal property. Whether the article is a finished product or an article in the process of manufacturing or assembling a different article of tangible personal property, by procedure commonly regarded as manufacturing, processing, fabricating, or refining, that changes some existing material into a material with a different form, use, or name. So we have some material. We have some machinery or equipment. We apply that machinery or equipment to that material, and we end up with some other material that's different in form, use, or name at the end. That changed material may be the finished product or it may be some component in the finished product. And that tangible personal property that comes out at the end of the process, if it's for sale at retail or wholesale or is for lease, it fits within the definition of the exemption. We spent a lot of time in the stipulation going through item by item because we obviously had a lot of customers, and we didn't want to have 40 or 50 customers coming in. But we spent a lot of time crafting that stipulation to be able to identify who's the only asset leased to. In general terms, what's the nature of that customer? What do they do? Where is it located? Is it in Illinois? Is it out of state? What's the business of the customer? What tangible personal property does the customer manufacture or produce that it sells to its own customers? What gas is needed by the ILMO customer in the production of that tangible personal property that gets sold? What purpose does that gas play in that process? How does the cryogenic system leased by ILMO to the ILMO customer fit into that ILMO customer's manufacturing or assembly process? And then is the cryogenic system leased by ILMO to its customer used for any other purpose? Or is the cryogenic system used exclusively as part of the customer's manufacturing or assembly process? And in each of the stipulated users, it's stipulated that it is used exclusively in that process. Now, when I presented this to the trial court, and my apologies for the color coding, but it made sense to me. There are essentially five buckets that these systems fall into. There's the blue bucket. The blue bucket consists of five cryogenic systems that were purchased and were installed in the state of Missouri, never used in the state of Illinois. And the trial court found that the total cost of those cryogenic systems, which is about $182,000, that the $14,472 of use tax, penalties, and interest that was paid under protest was improperly charged by the Department of Revenue and should be refunded. That's a very straightforward question. They were never in the state of Illinois to be used in the first place. All of the other four buckets were used in the state of Illinois. There's a red bucket consisting of two systems. And those two cryogenic systems were used by an ILMO customer in the state of Illinois, actually two ILMO customers, who were not using it in a manufacturing process or an assembly process. And so we conceded to the trial court that those two systems are subject to the use tax. And so the order does not include a refund of those, of the tax and penalty and interest that is associated with those red bucket systems. The yellow bucket is two systems in the state of Illinois that ILMO itself uses. They're systems that take liquid oxygen and liquid carbon dioxide and through the controlled process that ILMO has in the cryogenic system, produces gas, gas in the form of oxygen gas, gas in the form of carbon dioxide gas, which ILMO sells to its customers. It is raw material of the liquid oxygen or the liquid carbon dioxide being processed by the equipment, turning out a tangible personal property on the end of the process, which ILMO then sells. And so it fits squarely within the manufacturing machinery and equipment. The green bucket is the big bucket. It's got 24 systems in it. And those are the ones that ILMO leases to non-hospital, non-nursing home manufacturers. They use it in a whole variety of ways to take liquid nitrogen or liquid oxygen or liquid carbon dioxide or argon or whatever cryogenic liquid that they have purchased and shipped to their plants. And they're put into the system and then they are sometimes purely or sometimes in mixtures that use the equipment delivered at some point in the manufacturing process, whether that is welding or cutting or there's some food manufacturers that use it for making sure that edible matters that go into their food are not spoiled. There are pressure vessels that are tested using nitrogen. But in each of those 24 instances, that equipment is the link between material that is not usable in its current form as either liquid nitrogen or liquid argon into something that is usable in the manufacturing and assembling process that that customer of ILMO is engaged in. And the last bucket, the pink bucket, are the 11 cryogenic systems that ILMO leases to hospitals and nursing homes. Much as with ILMO, they take the liquid oxygen that is delivered to their facilities. The cryogenic system serves as the link to make what is unusable to its patients usable to its patients through the application of the cryogenic system and the vaporizing equipment. Your Honor, that's the whole situation there. Each of those cryogenic systems serves as the manufacturing or processing link that turns unusable materials into usable materials that are sold either by ILMO, by ILMO's non-hospital manufacturing customers, or by the hospitals and the nursing homes that use the oxygen. We believe that the trial court properly found in each of those instances that the sales tax charged on the HAZMAT fees was improperly claimed by the Department of Revenue and accordingly properly ordered that the tax penalty and interest be refunded to ILMO. And in each of the instances involving the cryogenic systems, whether they were used outside the state of Illinois or in any of the other three categories, that they were appropriately classified as manufacturing machinery and equipment and appropriately ordered the return of the taxes, penalty, and interest paid under protest. Thank you. Thank you, counsel. Mr. McPike, anything further? Just two very brief points about the fees. Obviously they requested summary judgment. It was their burden to show that the fees were not related to any taxable sale. The stipulation does not specify what those fees are related to. There's a question of fact and there's nothing else in the record to determine that. The department's concern obviously is once they figure out that these HAZMAT fees don't get taxed here and do get taxed here, okay, well, what regulations are we really recovering? Are they accounting for their regulations? Are they accounting for they have to separate out which regulatory costs actually regulate cylinders? Has there been an audit? I looked at that audit in the record and I believe that was the auditor's concern, but I don't know that that got translated into the stipulation. But since the stipulation is deficient, that's the law. There's nothing in the record. They have to go back. Summary judgment should be reversed. There's a question of fact. We can't guess what those regulations are. There's nothing in the audit that shows that they've in fact sorted them out. Do you take issue with the color-coded chart in the brief in terms of out-of-state sales, in-state sales, blah, blah, blah, blah? A lot of that stuff are issues that are not at issue on appeal. The issue is not what transaction the fee is attached to. You can attach it to anything. The issue is what was the cost of regulations governing the sale of gas and what was the cost of complying with regulations that govern the non-taxable lease cylinders? There's nothing even in the record to show it because there's a lot of stipulations. There's nothing even in the record to show what those regulations are, what the costs of compliance with those regulations are, if the regulations even distinguish. I mean, we do have stipulated to take one out, but this one is still at issue. So we feel that we believe that the court should reverse that grant of summary judgment. It was improperly granted. The second one, the vaporizers and the tanks. Even if this court should disagree with my argument and hold that the vaporizers are manufacturing equipment, and clearly the tanks are storage, you still have to reverse summary judgment because it was granted on the units as a whole. And there really isn't anything in the record that I recall where the cost of the vaporizers, the leasing the vaporizers, the cost of the vaporizers, and the cost of the tanks, if those have been sorted out. So you've got to go back and make a factual determination if you disagree with me about the vaporizers. You still have to reverse and send it back and say, okay, the vaporizers are not taxable. They're manufacturing equipment. The tanks are storage equipment. Reversed, figure it out. Sort out the prices. Tax one. The other one is tax exempt. We think the court should take my argument and look at the whole process. Say primarily even the vaporizers are storage equipment. Thank you. Thank you, counsel. I'll take this matter into advisement at the end of recess.